**Viva E. LIEBER, Appellant,**

v.

**MERCANTILE NATIONAL BANK AT DALLAS, Executor, et al., Appellees.**

No. 15535.

Court of Civil Appeals of Texas.

Dallas.

Jan. 8, 1960.

Rehearing Denied Feb. 5, 1960.

Niemann & Babb, Austin, for appellant.

Sanders, Lefkowitz & Green, and Lane, Savage, Counts & Winn, and Edward B. Winn, Dallas, for appellees.

DIXON, Chief Justice.

This appeal calls for us to decide two questions: (1) Whether Viva E. Lieber, surviving widow of Leroy Lieber, is entitled to maintain a suit, either for "specific performance" or for damages, arising out of the alleged breach of an alleged oral antenuptial agreement; and (2) Whether Viva E. Lieber, as surviving widow, is entitled to an allowance of $5,000 in lieu of a homestead. There were other matters originally involved in the litigation, but we need be concerned only with the above named questions.

The trial court rendered judgment against Viva E. Lieber as to the first question on the ground that the alleged oral contract as shown by the pleadings, is unenforceable; but rendered judgment in her favor on the second question.

No evidence was introduced at the trial. The judgment was based on the pleadings alone, except that the parties have agreed that if Viva E. Lieber is entitled, as a matter of law, to an allowance in lieu of a homestead, a fair amount is $5,000.

Viva E. Lieber has appealed from that part of the judgment finding against her in regard to her claim for breach of the alleged oral antenuptial contract. An independent executor, duly appointed, has appealed from that part of the judgment finding in favor of Viva E. Lieber in the amount of $5,000 as an allowance in lieu of a homestead.

## Preliminary Statement.

Most of the facts as alleged are undisputed. On May 30, 1955 Leroy Lieber, approximately 60 years of age, a resident of Fort Worth, Texas, died in Chicago, Illinois, leaving as survivors his widow, Viva E. Lieber of Fort Worth, Texas approximately 57 years of age, and four sisters, of Chicago, Illinois. The sisters, Natalie L. Bergman, Aline K. Lieber, Janice L. Latkin, and Dorothy Lieber, will hereinafter be referred to as the Four Sisters.

The deceased and Viva E. Lieber had been married a little more than a year, having married May 24, 1954.

Leroy Lieber left a will executed May 12, 1954, twelve days prior to his marriage to Viva E. Lieber. Under the terms of this will he left to his wife, Viva E. Lieber, his automobile, his diamond ring, and other tangible personal property, but expressly designated stocks, bonds, negotiable notes, cash, monies on deposit and other similar assets as "intangibles". Most of his estate, alleged by Viva E. Lieber to be approximately $200,000, consisted of these "intangibles".

The terms of the will also provided that Viva E. Lieber should receive a sum in cash, the amount to be determined as follows: $5,000 if Leroy Lieber died prior to January 1, 1955; $10,000 if he should die after that date, but before January 1, 1956; $15,000 if he should die after January 1, 1956, but before January 1, 1957; $20,000 if he should die after January 1, 1957, but before January 1, 1958; and $25,000 if he should die after January 1, 1958.

With the exception of $2,000 bequeathed to a cousin, all the rest and residue of the estate of Leroy Lieber was left to his Four Sisters in equal shares. Mercantile National Bank at Dallas, having been named in the will, qualified as independent executor. As Leroy Lieber had died after January 1, 1955 but prior to January 1, 1956 the independent executor, paid to Viva E. Lieber, and Viva E. Lieber accepted payment of the sum of $10,000 left to her under the terms of the will.

On January 4, 1957, Viva E. Lieber filed suit against the independent executor. Since her original petition was superseded by amended petitions we shall give only a bare outline of her first pleading. She asked for a declaratory judgment recognizing, among other things, that she was entitled to a statutory allowance of $5,000 in lieu of a homestead; and she further sued for damages in a net amount of $86,923 for breach of the alleged oral antenuptial contract. Later in this opinion we shall fill in details as to the alleged oral contract.

In an amended answer the independent executor brought in the Four Sisters as defendants. After the executor had interpled the Four Sisters, Viva E. Lieber filed an amended petition in which she abandoned her plea for declaratory judgment, limiting her action to a suit seeking to establish claims against the estate; then she sought to have the Four Sisters dismissed from the suit on the ground that they were neither necessary nor proper parties. The court overruled her motion to dismiss, and this action by the court is made the basis of a point on appeal by Viva E. Lieber.

After Viva E. Lieber abandoned her plea for a declaratory judgment, the independent executor filed a cross-action in which it asked for a declaratory judgment. By special exception Viva E. Lieber attacked the executor's plea for declaratory judgment as improper under the circumstances. The special exception was overruled. This action on the part of the court is also made the basis of a point on appeal by Viva E. Lieber.

In a later pleading Viva E. Lieber asked judgment for specific performance of the alleged oral antenuptial contract The trial court sustained exceptions levelled at this plea, and this action on the part of the trial court is made the basis of still another point on appeal by Viva E. Lieber.

## Pleadings.

Since no evidence was offered at the trial we must examine the pleadings carefully. In the paragraphs which follow we shall state the substance of the allegations in the third amended petition of Viva E. Lieber, the third amended answer and cross-action of the independent executor and the fourth amended answer of the Four Sisters.

The alleged oral antenuptial contract on which Viva E. Lieber seeks a recovery is as follows: After she and Leroy Lieber became engaged to marry but before their marriage, Leroy Lieber repeatedly asked her to quit a well paying job at a department store and promised her that if she would do so, he would see to it in his will that she would have an income for the rest of her life as good or better than she was then earning. Viva alleges that in reliance upon this promise she permanently terminated her employment with the department store where she had been working more than twenty years. At the time she was earning between $5,000 and $6,000 a year as a buyer for the store.

After the death of Leroy Lieber she was unable to find employment for six months, but finally found work which pays her only $150 to $200 a month. Her life expectancy at the time of the death of Leroy Lieber was twenty-six years. She alleged damages in the amount of $96,923 less the sum of $10,000 bequeathed to her in the will, which she has already received, leaving a net amount of $86,923 for which she prays judgment.

Viva E. Lieber further alleges that she first met Leroy Lieber in 1945 or 1946, when he was a salesman for Formfit Company of Chicago. They became friends. In 1948, in 1951 and again in 1953 Leroy Lieber suffered heart attacks and was hospitalized. Following the second heart attack he began talking of marriage with Viva. After recovering from the third attack he became more persistent, telling her that he had consulted with his physicians who had assured him that his health per-

mitted him to marry, and that if he had a home and a wife to look after him he would be better off. Just before Thanksgiving day in 1953 they became engaged to marry and set the date for some time in May 1954.

Viva E. Lieber also alleges that at the time of their engagement Leroy Lieber knew how long Viva had been employed at the department store, knew how much she was earning, knew her age, nearly fifty-six, and knew that if she should relinquish her position of buyer at that age, it was not likely that she would again obtain such a valuable position. Due to their respective ages, her excellent position, the condition of his health, and the nature of his work, which required a great deal of travel, she originally planned to continue to work after her marriage; but as the date for their marriage approached and while they were making plans for a honeymoon trip Leroy began importuning her to quit her job altogether, instead of taking a temporary leave of absence, as she had originally planned. Due to her age, the state of Leroy's health, the improbability of her ever again attaining such a valuable position and the uncertainty of being able to support herself in later years, she was very reluctant to resign permanently from her job.

After they became engaged and prior to their marriage Leroy repeatedly promised Viva that if she would permanently terminate her employment at the department store he would see to it in his will that after his death she could have an income for the rest of her life as good or better than she was then earning at the department store. Finally on or about March 1, 1954, in reliance upon said promises of Leroy, she agreed to quit her job and thereafter before their marriage did permanently resign her position.

We quote from Viva E. Lieber's third amended petition:

"* * * that the sole and only consideration given or asked in exchange

for Leroy Lieber's promise to so provide for plaintiff was plaintiff's termination of her position at Stripling's; that Leroy Lieber's promise was in no way conditioned upon or given in consideration of plaintiff marrying or promising to marry the said Leroy Lieber; that in truth and in fact plaintiff and Leroy Lieber were engaged to be married and making plans for their honeymoon trip before Leroy Lieber even mentioned plaintiff's relinquishing her job at Stripling's; that plaintiff, in full confidence and reliance upon her prospective husband providing for her in his will as he had represented and promised, finally terminated her position at Stripling's on May 15, 1954; that plaintiff executed his will in violation of his representations and promises to plaintiff on May 12, 1954; that on May 15, 1954, plaintiff fully performed her obligations under said contract; that plaintiff, having fully performed and executed her part of the contract by giving up a valued position and only means of livelihood, now finds herself widowed at the age of almost sixty years and unable to regain the position she relinquished as a result of the representations and promises of Leroy Lieber; * * *".

In pleading her claim to an allowance in lieu of a homestead, Sec. 273, Texas Probate Code, V.A.T.S., Viva E. Lieber alleges that the nature of Leroy Lieber's work required that he travel over a sizable territory beyond the boundaries of Tarrant County, Texas; that she assisted him on such trips by driving his car for him; and that as a result Leroy Lieber at the time of his death had not established a homestead.

The Bank as independent executor and the Four Sisters filed answers denying the existence of the alleged oral antenuptial contract. Then they pled (with the exception that the Bank did not join in pleading subparagraphs (3) and (5) below,) that if such oral agreement was ever made, it is unenforceable, as shown by the pleadings themselves in that:

(1) Said contract is without consideration for the reason that it in no way obligated Viva E. Lieber to do anything that she was not already committed to do.

(2) Said contract is too vague, indefinite, contingent, speculative and remote to furnish the basis for an enforceable claim.

(3) The claim of Viva E. Lieber is inconsistent with her action in demanding, receiving and negotiating a check from the independent executor in full payment of the legacy and her benefits under the will; and as a result of her said action she has irrevocably elected to take under the will, and not in derogation thereof, or a part thereof.

(4) If said oral antenuptial contract had a consideration, it was executed in consideration of marriage, therefore was unenforceable under the Statute of Frauds, art. 3995, Sec. 3, Vernon's Ann.Civ.St.;

(5) The contract has been fully performed by both parties in that Leroy Lieber did provide for Viva E. Lieber in his will, and Viva E. Lieber is estopped to question the adequacy of Leroy's performance since she has elected to accept benefits under the provisions of the will in her favor.

(6) The oral contract is in violation of arts. 4610 and 4611, V.A.C.S.

(7) The oral antenuptial contract is against public policy.

(8) Viva E. Lieber as a matter of law was put to an election to take under the will of Leroy Lieber, or to take the benefit of the exemption laws of the State of Texas contrary to the will, and having elected to take under the will, is not entitled to an allowance in lieu of a homestead under the terms of Sec. 273, Texas Probate Code.

Opinion.

■ In her first point on appeal Viva E. Lieber in her role as appellant asserts that

it was error for the court to deny damages to appellant on the grounds that the alleged contract violated arts. 4610 and 4611, V.A.C.S.

Art. 4610, V.A.C.S. provides that parties intending to marry may enter into such stipulations as they may desire provided they be not contrary to good morals, or to some rule of law, and provided further they do not seek to alter the legal orders of descent.

Art. 4611, V.A.C.S. provides that every matrimonial agreement must be acknowledged before an officer authorized to take acknowledgements to deeds and attested by at least two witnesses.

In their briefs on appeal appellees have not attacked the alleged agreement on the ground that it is contrary to good morals or that it seeks to alter the legal orders of descent.

In our opinion the alleged oral contract on which appellant relies cannot be upheld since it does not comply with the requirements of art. 4611, V.A.C.S. The above statute was enacted many years ago and has been passed on by our Courts several times. Long ago the Supreme Court of Texas said:

"Art. 1390, O. & W. Digest, provides that every matrimonial agreement must be made by an act before a notary public and two witnesses. Pas.Dig. art. 4633, note 1041. In the alleged marriage contract in this cause there are no witnesses; this is not in conformity with the statute, and the appellee cannot be affected thereby. This writing was properly disregarded by the Court." Ellington v. Ellington, 29 Tex. 2.

We are not aware that there has been any change in the above holding over the years. In at least two instances it has been followed. Hickman v. Hickman, Tex.Civ.App., 10 S.W.2d 738; Hartman v. Hartman, Tex.Civ.App., 32 S.W.2d 233.

Appellant says that art. 4611, V.A.C.S. is not applicable to oral contracts when the controversy is between the parties to the contract or those claiming under them. In support of this view, we are referred to 23 Tex.Jur. p. 25, where speaking of art. 4611, V.A.C.S. it is said:

"But this, of course, is not the rule between the parties or those claiming under them, for as to them and those having notice the contract may be proved in any of the usual ways; the statutes of authentication and registration are primarily for the protection of strangers dealing with the property."

The only case cited by Texas Jurisprudence in support of its statement is Lott v. Bertrand, 26 Tex. 654, at page 664. The cited case had to do with a written deed of marriage contract duly executed in Florida and filed for record in that State. The parties later moved to Texas, but failed to record the deed in Texas. We do not think the holding applicable here. The case turned primarily on the question of recordation. Neither in the Lott case nor in any other case cited by appellant is an oral antenuptial contract involved. Appellant's first point on appeal is overruled.

■ Viva E. Lieber's second and third points, based on her alternative pleadings, assert in substance that the oral antenuptial contract was executory so far as Leroy Lieber and appellees are concerned, but as to Viva E. Lieber the contract was fully performed by her in that, complying with the terms of the agreement, she permanently terminated her employment at the department store. She contends that this full performance of the contract on her part sets up a promissory estoppel in her favor notwithstanding arts. 4610 and 4611, V.A.C.S. In support of this view she cites us to Doyle v. Glasscock, 24 Tex. 200, 201; Morris v. Gaines, 82 Tex. 255, 17 S.W. 538; Williston, Contracts 307, Sec. 139, and "Restatement of the Law of Contracts," American Law Institute, Vol. 1, Sec. 90, page 110.

The executor and the Four Sisters answer appellant's second and third points by saying that no conduct on the part of the independent executor or the Four Sisters is pled by Viva E. Lieber raising an estoppel against them. We see no merit in such answer. The independent executor stands in the shoes of Leroy Lieber for purposes of passing on the question of estoppel. Neither the executor's conduct nor the conduct of the Four Sisters furnishes the test here. The conduct of Viva E. Lieber and of Leroy Lieber, during his life time, furnishes the test, for the consequences of their conduct will be imputed to the independent executor if their acts were of such a nature as to set an estoppel in favor of Viva E. Lieber. The same is true of the Four Sisters since they claim under and through Leroy Lieber.

■ The question is: Under the circumstances pled by Viva E. Lieber is the alleged performance by her—her quitting her job—sufficient to take the contract out of the Statute of Frauds thus permitting enforcement of the contract on the grounds of estoppel?

In our opinion the facts as alleged by Viva E. Lieber do not support her plea of promissory estoppel. This statement from 30 A.L.R.2d 1420–1421 seems to us pertinent here:

"The act of marriage alone is almost universally regarded as not such performance of a prior parol agreement in consideration of marriage as to remove the agreement from within the statute of frauds; nor is the deficiency in performance necessarily supplied by acts in addition to marriage. Thus, it is most often held that there has not been sufficient part performance where there is evidence of such acts, in addition to the marriage of the parties, as the rendition of services by a spouse or a child of a spouse, pursuant to an agreement by which a husband or wife has promised that if such services are rendered he will perform some act

beneficial to the other, or the execution of a will by a spouse, pursuant to an oral antenuptial contract to devise or bequeath property to the surviving widow or widower; * * * In addition, the courts have refrained from applying the rule of part performance to save an oral antenuptial contract from the statute of frauds where the acts, in addition to marriage, alleged as part performance were * * * *the giving up of employment*, or the payment of money by an intended husband or wife in return for some promised postnuptial reward; * * *."
(Emphasis ours.) See also Hutnak v. Hutnak, 78 R.I. 231, 81 A.2d 278; In re Keeler's Estate, Sur., 53 N.Y.S.2d 61.

There is another reason why we believe that Viva E. Lieber's plea of promissory estoppel cannot be upheld. The Four Sisters plead and in their brief present a counterpoint to the effect that appellant, by accepting benefits under the will, namely the $10,000 bequest to her, has made an election to take under the will; has thereby adopted the whole contents of the will so far as it concerns her; and has, as a result, renounced every right inconsistent with the will.

■ The law books contain many will cases in which a party has been required to make an election, and perhaps an equal number of cases in which a party has been held not to be required to make an election. Our Supreme Court has approved certain principles to be used as a guide in determining the question. In Miller v. Miller, 149 Tex. 543, 235 S.W.2d 624, at pages 626 and 627 our Supreme Court quotes with approval this statement from the earlier case of Philleo v. Holliday, 24 Tex. 38, at page 45:

"The principle of election is, that he who accepts a benefit under a will, must adopt the whole contents of the instrument, so far as it concerns him;.

conforming to its provisions, and renouncing every right inconsistent with it; as where the wife claims something under the will which will disappoint the will, * * *."

Also in Miller v. Miller, supra, our Supreme Court quotes with approval this statement in 69 C.J. § 2330, pp. 1089, 1090:

"Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." See also 97 C.J.S. Wills § 1237.

■ Applying the above stated principles to the facts of the instant case as pled by appellant, we believe that appellant was required to make an election; and having elected to take the $10,000, left to her by her husband, may not now attack that part of the will.

As we view her pleadings, Viva E. Lieber's suit is an attack on that portion of the will bequeathing her only $10,000. The ground of her attack is that the bequest should have been in an amount of about $96,000. The effect of sustaining her claim would be to defeat and prevent the full effect and operation of other parts of the will. Leroy Lieber so wrote his will that after the executor had complied with all requirements of our law, such for example as an allowance in lieu of a homestead, the Four Sisters, as residuary legatees, would receive all the stocks, bonds, securities, and cash over and above the $10,000 bequeathed to Viva E. Lieber, and the $2,000 bequeathed to a niece. But the will as to this part will be defeated if appellant's contention is upheld. Her claim is incon-

sistent with the plain unambiguous terms of the will.

That such is the proper view to be taken of the situation is shown, we believe, by the position appellant herself takes. She asked for specific performance until her plea was stricken by the court by sustaining a special exception. Appellant assigns the ruling of the court as error and has made it one of her points on appeal. She still insists that she should be allowed to plead specific performance of the oral antenuptial agreement. In other words she claims that the will as it is drawn is contrary to Leroy Lieber's promise, so the alleged oral antenuptial contract should be specifically performed by the independent executor on the ground that equity considers that as done which ought to have been done. We shall further discuss this subject later in this opinion.

■ We are aware that the question of election is usually a question of fact. But where the facts are undisputed the question may well become, and in this case has become, a question of law. Bumpass v. Johnson, Tex.Com.App., 290 S.W. 739; White v. Hebberd, Tex.Civ.App., 89 S.W.2d 482, 486. In reaching our conclusion we have accepted as true all the fact allegations contained in appellant's pleading.

We sustain the Four Sisters' counterpoint asserting that appellant Viva E. Lieber, by accepting the bequest of $10,000 has made an election to take under the will as it is, and is bound by her election. As a result of our so holding, appellant's plea of equitable estoppel becomes immaterial. For having elected to take under the will as it is Viva E. Lieber will not now be allowed on the ground of equitable estoppel to take contrary to the will. Appellant's second and third points are overruled.

In her fourth, fifth and sixth points, Viva E. Lieber says it was error for the court (1) to overrule her special excep-

tion to the independent executor's cross-action for declaratory judgment; (2) to overrule her motion to dismiss the Four Sisters from the suit on the grounds that they are neither necessary nor proper parties; and (3) to overrule her special exceptions to the Four Sisters' pleading of such affirmative defenses as the Statute of Frauds to defeat a contract to which they were never a party.

We see no merit in any of the three points. Viva E. Lieber herself originally sought a declaratory judgment. After the executor interpled the Four Sisters, Viva E. Lieber abandoned her plea for declaratory judgment. It was not until then that the executor filed its cross-action for declaratory judgment in order to preserve and establish the nature of the proceeding as one for declaratory judgment. It was improper for the executor to do so, Viva E. Lieber says, because her suit to establish claims against the estate had already raised issues which should give all the answers to the executor's plea for declaratory judgment. In support of her position she cites us to Southern Traffic Bureau v. Thompson, Tex.Civ.App., 232 S.W.2d 742; Joseph v. City of Ranger, Tex.Civ.App., 188 S.W.2d 1013; Anderson, "Declaratory Judgments" Sec. 69, p. 192; Sec. 337, p. 776; 1 C.J.S. Actions § 18, p. 1029; 26 C.J.S. Declaratory Judgments § 139, p. 328.

In our opinion it was not reversible error under the circumstances presented in this case for the executor to file its cross-action for declaratory judgment. Viva E. Lieber's suit was really an attack on the will of Leroy Lieber. She filed an original and three amended petitions. While she was thus changing her pleadings the executor was entitled for its own protection to seek definite directions from the court so as to clarify its duties and obligations under the terms of the will. And this is true even if it finally turned out that its plea raised substantially the same issues as Viva E. Lieber's suit to establish

claims against the estate. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837 (syl. 10). Certainly under Rule 434, Vernon's Rules of Civil Procedure, this duplication of issues need not reverse the judgment.

Viva E. Lieber claims the Four Sisters were neither necessary nor proper parties to the suit because (1) she abandoned her plea for declaratory judgment, and (2) the executor had no right to maintain its cross-action for declaratory judgment. She asserts that since she had abandoned her action for declaratory judgment the only action properly pending was her suit to establish claims against the estate, and in such an action the executor alone is the only necessary or proper party. In support of this contention she cites us to a number of cases including Howard v. Johnson, 69 Tex. 655, 7 S.W. 522; Jenkins v. Cain, 72 Tex. 88, 10 S.W. 391; Tex., 12 S.W. 1114; Garza v. Wilkinson, Tex.Civ.App., 129 S.W.2d 839, and Cain v. Church, Tex.Civ.App., 131 S.W.2d 400, the last named case having been decided by this court. In Sec. 3.10 p. 206 of his work "Texas Civil Practice", speaking of heirs McDonald says, "They are neither 'necessary' nor 'proper' parties to *routine suits,* not involving title, brought to establish claims against the estate." (Emphasis ours.)

We believe appellant's contention is untenable for these reasons:

(1) This is not a "routine suit" to establish a claim against the estate. It is more of a suit attacking and seeking to reform a will.

(2) Under Sections 3(c), 312(a) and 312 (e), of our Probate Code any person interested in an estate may object in writing to the allowance of a claim and may appeal if dissatisfied with the court's action. Though this section doubtless applies to court controlled executors and estates, we know of no reason why it should not be the rule also as to estates and suits to establish

claims such as Viva E. Lieber's claim involving an independent executor. See also Alexander v. Berkman, Tex.Civ.App., 3 S.W.2d 864, (Syl. 10); Goldsmith v. Mitchell, Tex.Civ.App., 57 S.W.2d 188; and .14A Tex.Jur. 131–132; 526.

(3) This suit also involves the executor's cross-action for declaratory judgment which we have held the executor was entitled to maintain. Since their interest would be affected as legatees the Four Sisters are proper parties. Art. 2524–1, Sec. 11, V.A.C.S.; Weems v. Frost National Bank of San Antonio, Tex.Civ.App., 275 S.W.2d 956; Tex.Civ.App., 278 S.W.2d 318.

(4) Our Supreme Court in Jenkins v. Cain, Tex., 12 S.W. 1114, cited by Viva E. Lieber, says that the heirs in that case were neither necessary nor proper parties; but the court says also that the failure of the court to sustain an exception on the grounds of misjoinder of parties was not grounds for reversal.

■ We are unable to agree with Viva E. Lieber that the Four Sisters are not entitled to assert such defenses as the Statute of Frauds. Among the cases cited by appellant are Jackson v. Piper, Tex.Civ.App., 28 S.W.2d 240 and a case decided by this court, Wyche v. Noah, Tex.Civ.App., 288 S.W.2d 866, wherein we held that the Statute of Frauds may not be invoked by a stranger to the contract. The difference between the Wyche case and this case is that here the Four Sisters, since they claim by, through and under Leroy Lieber under the terms of his will, are not to be considered as strangers to the contract for purposes of testing the enforceability of the contract. Richardson v. Iley, Tex.Civ. App., 299 S.W.2d 187 (Syl. 4); Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513 at page 515.

Appellant Viva E. Lieber's fourth, fifth and sixth points on appeal are overruled.

Viva E. Lieber's second amended petition contained a count for specific perform-ance. This plea was attacked by the Four Sisters in a special exception on the ground that the alleged oral agreement (1) violated the Statute of Frauds in that (a) if it was made at all, it was made in consideration of marriage, and (b) it could not be performed within one year contrary to art. 3995, Secs. 3 and 5, V.A.C.S.; and (2) the alleged breach of an oral contract, if it occurred at all, occurred more than two years prior to the filing of suit contrary to art. 5526, Sec. 4, V.A.C.S. The trial Court sustained the special exception, and this action by the court is attacked as error in Viva E. Lieber's seventh point on appeal.

■ What has sometimes been referred to as "specific performance" has been recognized as a remedy through which a promisee may enforce against an executor a contract made by a person since deceased to devise or bequeath property. It is based on the maxim that equity regards that as done which ought to have been done. Of course the court cannot order a will to be executed. The contract is enforced by impressing a trust upon the property in the hands of the promisor's representatives or transferees. 44 Tex.Jur. 671; 81 C.J.S. Specific Performance § 28, p. 473.

■ In the instant case it was not reversible error for the court to sustain the special exception for the following reasons:

(1) Viva E. Lieber's claim involved only personal property, 38 Tex.Jur. 532; 81 C. J.S. Specific Performance § 65, pp. 568–569.

(2) The suit for damages for breach of the alleged oral contract raised the same issues and sought substantially the same relief as her action for specific performance would have allowed her, so her suit for damages was an adequate remedy. 44 Tex. Jur. 673. Therefore the error of the court, if it was error, in striking her plea for specific performance was harmless.

(3) The plea did not identify any particular property on which to predicate her

plea for specific performance. Boehl v. Wadgymar, 54 Tex. 589; O'Herin v. Neal, Tex.Civ.App., 56 S.W.2d 1105; Witt v. McCrohan, Tex.Civ.App., 57 S.W.2d 1127; 81 C.J.S. Specific Performance § 67, p. 573.

(4) Her suit sought to enforce an oral contract in consideration of marriage contrary to art. 3995, Sec. 3.

Our holding numbered (4) above calls for and deserves further discussion. Viva E. Lieber earnestly argues that the only consideration for Leroy Lieber's oral promise to will property to her was her termination of her employment at the department store. She claims that the promise to will the property to her was in no way conditioned on plaintiff marrying testator. They had contemplated marriage for several years and had become engaged to marry several months before the agreement to will property to Viva had been entered into. Viva E. Lieber in support of her contention cites these authorities: Riley v. Riley, 1856, 25 Conn. 154; Larsen v. Johnson, 1890, 78 Wis. 300, 47 N.W. 615; Rainbolt v. East, 1877, 56 Ind. 538; Hendershot v. Hendershot, 1944, 135 N.J.Eq. 232, 37 A.2d 770; Corbin on Contracts, Vol. 2, page 592.

The question is not without difficulties, but we find ourselves unable to agree with appellant. Viva E. Lieber's allegations in regard to the nature of the consideration for the oral contract are conclusions on her part which are negatived by the factual averments in her petition. In the light of these averments, her agreement to quit work and Leroy Lieber's promise to remember her in his will are inseparably linked to and are part and parcel of an indivisible marriage agreement.

We believe the correct rule under the facts alleged by Viva E. Lieber is that stated in 37 C.J.S. Frauds, Statute of § 5, pp. 517, 518:

" * * * by some authorities, agreements in consideration of marriage are distinguished from agreements made merely in contemplation or expectation of marriage, and they hold that the former are within the statute of frauds, while the latter are not; but this distinction has been repudiated.

"If the marriage is a mere incident and not the end to be obtained or the purpose to be accomplished, it is not deemed to be the consideration; but where, despite other consideration, the real inducement was the marriage, the agreement is unenforceable. * * * the general rule has been said to be that, except for mutual promises to marry, any promise for which the whole consideration or part of the consideration is marriage or a promise of marriage is within the statute."

See also Aiken v. English, 131 Kan. 226, 289 P. 464; Fischer v. Fischer, 106 Neb. 477, 184 N.W. 116, 21 A.L.R. 306; Alexander v. Alexander, 96 N.J.Eq. 10, 124 A. 523. Terry v. Terry, 264 Ky. 625, 95 S.W. 2d 282; Stevens v. Niblack's Adm'r, 256 Ky. 255, 75 S.W.2d 770; Fargason v. Pope, 197 Ga. 848, 31 S.E.2d 37; In re Keeler's Estate, Sur., 53 N.Y.S.2d 61; Resnikoff v. Keilsohn, Sup., 73 N.Y.S.2d 449; Bernstein v. Prudential Ins. Co. of America, 204 Misc. 775, 124 N.Y.S.2d 624; Hutnak v. Hutnak, 78 R.I. 231, 81 A.2d 278; and Tellez v. Tellez, 51 N.M. 416, 186 P.2d 390.

We see no merit in appellees' claim that the contract was contrary to art. 3995, Sec. 5, V.A.C.S. At the time the agreement was entered into it was possible for the contract to have been performed within one year. Leroy Lieber made his will and might have died within the first year. Cheney v. Coffee, 131 Tex. 212, 113 S.W.2d 162 (Syl. 11); Roberts v. Carlisle, Tex.Civ.App., 287 S.W. 110; Page on Wills, Vol. 4, p. 857.

We do not agree with appellees' contention that Viva E. Lieber's cause of action was barred by the Statute of Limitation. Art. 5526, Sec. 4, V.A.C.S. Failure to perform a contract to make a

will cannot be determined until the promis-sor's death. Richardson v. Lingo, Tex.Civ. App., 274 S.W.2d 883; Page on Wills, Vol. 1, Sec. 1744, p. 910.

Viva E. Lieber's seventh point on appeal is overruled.

### Appeal of Independent Executor and Four Sisters.

The independent executor and the Four Sisters have appealed from that part of the trial court allowing Viva E. Lieber the sum of $5,000 in lieu of a homestead.

No evidence was heard by the court on this issue. However the parties did stipulate that if an allowance is proper $5,000 is a reasonable amount; and it is conceded that at the time of his death Leroy Lieber had not established a homestead. It is obvious that factual allegations material to this part of the appeal are not in dispute.

The only grounds on which the executor as appellant attacks the judgment are that, as shown by the pleadings, (1) Viva E. Lieber was put to an election to take the benefits under the will, or to forego such benefits and to take the statutory allowances permitted by law including her allowance in lieu of a homestead; and (2) since she elected to take the benefits given her under the will, she is not entitled to the allowance in lieu of a homestead. To support of these two points on appeal appellants rely on the cases of Miller v. Miller, 149 Tex. 543, 235 S.W.2d 624, and Lindsley v. Lindsley, 139 Tex. 512, 163 S.W.2d 633.

 We do not agree with appellants. The will does not by express words or manifest implication reveal an intention on the part of the testator to exclude his widow from the allowance in lieu of a homestead. Carroll v. Carroll, 1858, 20 Tex. 731, 732; Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, 544, Viva's allegation that they had not established a homestead is not disputed. We see no inconsistency in the act of Viva E. Lieber in accepting the $10,000 bequest and also claiming an allowance in lieu of a homestead. The two cases cited by appellants do not seem to us to be in point here because of material differences in the factual situations.

The facts in the Miller case, supra, relied on by appellants, show a plain conflict between the terms of the will and the widow's claim for allowances. The opinion of the court, 235 S.W.2d on page 628, points out the irreconcilable conflict:

"Now let us examine our case to see if there are inconsistencies between the rights of the widow under the law and what she is given under the will of her husband. Under the law she has a right to use and occupy 200 acres of the 233 acres of the separate property of testator as her homestead so long as she shall live, and without interference on the part of the heirs at law of the testator. Under the will she receives a fee simple title to an undivided one-eighth of the whole 233 acres, and each of testator's seven children also receive a fee simple title to an undivided one-eighth of said land. A mere statement of these two rights show their inconsistency."

In the Lindsley case, supra, the conflicts are equally obvious and irreconcilable. Under the will the widow was given fifty books out of the family library with the balance of books to go to a named educational institution. Under the law the widow was entitled to the family library as exempt personal property. Again: the will gave the widow only 20 acres out of a 500 acre farm, the balance going to trustees empowered to operate, rent, or lease the land. Under the law the widow was entitled to 200 acres out of the farm.

The points on appeal of the independent executor and the Four Sisters are overruled.

The judgment of the trial court is affirmed.