No. 04-00-00830-CR



Brian I. GUILLORY,


Appellant



v.



The STATE of Texas,


Appellee



From the 399th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CR-2758


Honorable Juanita Vasquez-Gardner, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Sarah Duncan, Justice


Delivered and Filed: September 12, 2001


AFFIRMED

 Brian I. Guillory ("Guillory") was found guilty by a jury of aggravated robbery, and
sentenced to 15 years incarceration. Guillory asserts three grounds for appeal: (1) the evidence was
factually insufficient to prove identity; (2) the punishment charge misdirected the jury into believing
that Guillory was eligible for good time credit; and (3) Guillory received ineffective assistance of
counsel when his attorney failed to raise the issue of good time credit. 

 Facts

 On November 25, 1999, a cab driver, Louis Najera ("Najera") was dispatched to the Hilton
hotel at approximately 10:30 p.m. When Najera arrived, a black male wearing baggy clothing and
a red bandana entered his cab. Najera testified at trial that during the course of the cab ride, he heard
"a slide action on a automatic pistol." When he turned, Najera saw a small, chrome-plated pistol and
was told by his passenger to "hand it over." Najera gave the gunman approximately $76.00.

 Najera further stated that the police approached him later that night and told him "they have
someone in custody whom they think is the-you know, the-person I reported on and they need me
to identify him." According to his testimony, one of the officers escorted Najera to a car with the
suspect in the rear seat. Najera was able to see the suspect from the side, well illuminated by
headlights. Najera identified the suspect as the person who robbed him. Guillory was also identified
using a similar procedure by Kim Fieldhausen ("Fieldhausen") who was working security at the
Hilton the night of the robbery. Fieldhausen testified that the suspect in the back of the patrol car
was the same person who had just gotten into a cab at the Hilton hotel.

 When cross-examined, Najera testified that the passenger who robbed him touched Najera's
briefcase and its contents, the cab door, and the glove compartment. When the cab was tested for
prints, however, none of the prints matched Guillory's. While a search of Guillory's home did yield
clothing similar to that worn by the robber, the pistol was never recovered.

 In support of Guillory's alibi, James Jernigan ("Jernigan") testified that he picked up Guillory
at the Hilton at approximately 9:20 p.m., and drove him to Georgia Chittum's ("Chittum's") home.
Chittum testified that Guillory arrived at approximately 9:30 p.m., and left about two hours later.


Discussion

Factual Insufficiency

 Guillory's first point of error contends that the evidence is factually insufficient to support
his conviction for aggravated robbery. A factual insufficiency point requires the reviewing court to
assess all of the evidence and reverse only if the lower court's finding is so against the great weight
of the evidence as to be clearly wrong and manifestly unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Martinez v.
State, 844 S.W.2d 279, 283 (Tex. App.-San Antonio 1992, pet. ref'd). Most importantly, a jury's
verdict may not be disturbed because an appellate court would reach a different conclusion or wishes
to substitute its judgment for that of the jury members'. Jaffe Aircraft Corp. v. Carr, 867 S.W.2d
27, 28 (Tex. 1993); Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994). As the trier
of fact, the jury is free to believe all, some, or none of the evidence and testimony presented. Our
review must defer to the jury verdict so as to avoid substituting our judgment for that of the jury.
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 133. We may
find the evidence factually insufficient only where necessary to prevent manifest injustice or where
the finding of guilt is so obviously weak as to undermine the confidence of the jury verdict. Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Cain, 958 S.W.2d at 407.

 We find there was sufficient evidence to support the jury's guilty verdict. While Guillory
presented alibi evidence, the record reflects a potential bias on behalf of both witnesses, due to their
friendship with Guillory and their general distrust of law enforcement. As the sole arbiter of
credibility, the jury was within its rights to reject or discount the alibi witnesses' testimony. Cain,
958 S.W.2d at 408-09. 

 Guillory further argues that when asked to identify the person he picked up at the hotel,
Najera only described Guillory's clothing rather than pointing to him directly. Guillory contends that
the prosecution's request that the record reflect that Najera had identified Guillory was not a
sufficient identification due to the trial court's failure to acknowledge the identification by repeating
the prosecution's statement. The trial court's failure to repeat the statement is not error. If Guillory
felt that there had been an erroneous identification (i.e., the witness identified someone other than
the defendant Guillory), he must object "to the identification procedure employed or by an offer of
a bill of acceptance." Purkey v. State, 656 S.W.2d 519, 520 (Tex. App.-Beaumont 1983, pet. ref'd).
Guillory's failure to preserve any perceived identification error in the record waives his ability to
raise the issue on appeal. 

 In addition to the evidence offered concerning Guillory's clothes and his red bandana, the
assailant told Najera that he had moved from Louisiana and was living with his mother. Guillory
was later shown to have been from Louisiana and to be living with his mother. This court has held
that a jury is entitled to draw reasonable inferences from circumstantial evidence to decide ultimate
facts. In re V.M.D., 974 S.W.2d 332, 346-47 (Tex. App.-San Antonio 1998, no pet.); Kelley v. State,
968 S.W.2d 395, 398 (Tex. App.-Tyler 1998, no pet.). We therefore find it reasonable for the jury
to conclude that Guillory committed the assault on Najera based upon the circumstantial evidence
presented. Guillory's first point of error is overruled.

Erroneous Jury Charge

 An erroneous or incomplete jury charge does not automatically result in a reversal of the trial 

court's findings. The standard of review for jury charge errors depends on whether there was a
proper objection at the trial level. Almanza, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Before
this court can begin an inquiry into any possible harm, Guillory must have objected at the trial level.
In the absence of an objection, any error is reversible only if the defendant can show egregious harm.
Jimenez v. State, 32 S.W.2d 233, 237-38 (Tex. Crim. App. 2000); Abdnor v. State, 871 S.W.2d 726,
732 (Tex. Crim. App. 1994). Because Guillory did not object to the jury charge at trial, he must
demonstrate egregious harm. Id.; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Direct evidence of harm is not required to establish egregious harm. Hutch v. State, 922 S.W.2d 166,
171 (1996). Instead, we examine the entire jury charge, the evidence presented, arguments of
counsel, and other relevant information contained in the record as a whole. Mann v. State, 964
S.W.2d 639, 641 (Tex. Crim. App. 1998); Navarijo v. State, No. 04-99-00833-CR, 2001 Tex. App.
LEXIS 2994, at *7 (Tex. App.-San Antonio May 9, 2001, no pet. h.). When reviewing charge
errors, this court must engage in a two-pronged review; first, we determine whether error actually
exists in the charge, and second, whether the harm resulting from the error was so egregious as to
require reversal. Almanza v. State, 686 S.W.2d at 171. Egregious harm consists of errors that effect
the very basis of the case, or that deprive the defendant of a valuable right, vitally effect a defensive
theory, or make the case for conviction or punishment clearly and significantly more persuasive.
Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); Almanza, 686 S.W.2d at 172.

 "The law must come from the court, the facts must be decided by the jury, and the charge,
to instruct the jury properly, must apply the law to the facts raised by the evidence." Williams v.
State, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977); see Abdnor v. State, 871 S.W.2d 726, 731 (Tex.
Crim. App. 1994), Daniels v. State, 633 S.W.2d 899, 901 (Tex. Crim. App. 1982). The function of
the jury charge is to instruct the jury on applying the law to the facts. The function of the jury charge
is not merely to avoid misleading or confusing the jury, but to direct and to prevent confusion. Any
charge that does not properly apply the law to the facts fails to enable the jury to perform its duty:
to ultimately decide those facts. Williams v. State, 622 S.W.2d 578, 579 (Tex. Crim. App. 1981).
As an essential element of the jury's deliberations, "[i]t is clear that a charge must include an accurate
statement of the law." Cane v. State, 698 S.W.2d 138, 139 (Tex. Crim. App. 1985).

 The trial court is required to inform the jurors of the effects of parole and good conduct time
for certain non-capital felony offenses. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon
Supp. 2001). The instruction is a blanket requirement, employing the word "shall" when directing
the trial court on the proper language, regardless of whether the defendant is eligible for such time. (1)
Guillory argues that 37.07 § 4(a)'s reference to good conduct time is a direct violation of both state
and federal Due Process when applied to Guillory, who was not eligible for good time conduct.
Jimenez v. State, 992 S.W.2d 633, 637-38 (Tex. App.-Houston [1st Dist.] 1999), aff'd on other
grounds, 32 S.W.2d 233 (Tex. Crim. App. 2000) (affirming harmless error finding, but declining to
deem 37.07 § 4(a) unconstitutional as applied). But see, Bradley v. State, 45 S.W.2d 221, 224 (Tex.
App.-Houston [1st Dist.] 2001, no pet. h.) (refusing to overrule previous finding that the statute's
application is unconstitutional). 

 The mandatory nature of this instruction has been challenged in several courts of appeals in
an effort to determine whether the instruction is misleading or unconstitutional if the defendant is
not eligible. Edwards v. State, 10 S.W.3d 699, 703 (Tex.App.-Houston [14th Dist.] 1999, pet.
granted); Luquis v. State, 997 S.W.2d 442, 443 (Tex. App.-Beaumont 1999, pet. granted); Jimenez
v. State, 992 S.W.2d 633, 637-38 (Tex. App.-Houston [1st Dist.] 1999, pet. granted); see also Hyde
v. State, 970 S.W.2d 81, 88-89 (Tex. App.-Austin 1998, pet. ref'd). In Guillory's case, as in all of
the cases challenging article 37.07 § 4(a) as misleading or unconstitutional, the jury was accurately
informed as to the effects of the parole laws and good time conduct. The charge to the jury was a
verbatim recitation of the statute, with the minor omission of the word "the." The Texas Court of
Criminal Appeals, though granting at least three petitions on the subject, has not declared an
instruction under article 37.07 in such circumstances unconstitutional. Jimenez, 32 S.W.2d at 637-38. Precedent dictates that the statute is constitutional as applied to Guillory. Accord, Alawad v.
State, No. 14-99-00971-CR, 2001 WL 699574 (Tex. App.-Houston [14th Dist.] June 21, 2001, no
pet. h.). The jury "may consider the existence of the parole law and good conduct time" in reaching
its decision. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a). It is not clear that the error, if any,
harmed Guillory.

 The State requested that the jury sentence Guillory to between 30 to 40 years. The jury chose
15 years incarceration, less than half of what the State was seeking. Navarijo v. State, No. 04-99-00833-CR, 2001 Tex. App. LEXIS 2994, at *7 (Tex. App.-San Antonio May 9, 2001, no pet. h.)
(noting that the jury's punishment was well within the statutory range and considerably less than that
urged by the State)

 After examining the instructions and the proceedings as a whole, there is no evidence of
egregious harm as a result of the jury instructions. The jury instructions accurately outlined the
parole process, and accurately stated that Guillory would not be eligible for parole until serving the
lesser of half of his sentence or thirty years, irrespective of any good conduct time earned. The jury
was allowed to consider the existence of good conduct time, but admonished not to apply its
principles to Guillory's sentence. There is no indication that the jury violated the trial court's
instructions concerning the role good conduct time should play in their deliberations. We find that
the error, if any, contained in the jury instructions was harmless. Guillory's second point of error
is overruled.

Ineffective Assistance of Counsel

 In order to prevail on an ineffective assistance of counsel point of error, Guillory must
demonstrate by a preponderance of the evidence that: (1) counsel's performance was so deficient as
to fall below an objective standard of reasonableness; and (2) Guillory was prejudiced, i.e., a
reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding
would have been different. Strickland v. Washington, 466 U.S. 668, 690 (1984), Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). There is a strong presumption that counsel's conduct
fell within the wide range of reasonable professional assistance. Thompson, 9 S.W.3d at 813. To
defeat this presumption, any allegation of ineffectiveness must be firmly founded in the record, with
the record affirmatively demonstrating the alleged ineffectiveness. Id. at 814. 

 Guillory's third point of error alleges that he received ineffective assistance of counsel when
his attorney failed to object to the allegedly improper jury instruction during the penalty phase. The
Texas Code of Criminal Procedure mandates that the charge be given under certain circumstances,
however. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2001). (2) Guillory was
convicted of aggravated robbery, one of the offenses explicitly requiring the charge given by the trial
court. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2001); Cagle v. State, 23
S.W.3d 590, 593 (Tex. App.-Fort Worth 2000, no pet.); Martinez, 969 S.W.2d at 500. Had
Guillory's attorney objected to the jury instructions, there is little chance that the trial court would
have sustained the objection. Because Guillory is unable to demonstrate that his trial counsel's
failure to object fell below an objective standard of reasonableness or that he was in any way
prejudiced as a result, neither of the ineffective assistance requirements are met. Guillory's third
point of error is overruled.

Conclusion

 We overrule each of Guillory's three points of error and affirm the trial court's judgment.


 Phil Hardberger, Chief Justice

DO NOT PUBLISH
1. The applicable portion of the jury instruction reads as follows: 

 Sec. 4. (a) In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury
rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3g(a)(1),
Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3g(a)(2), Article
42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury
in writing as follows:

 "Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn
time off the period of incarceration imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work
assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take
away all or part of any good conduct time earned by the prisoner.

 "It is also possible that the length of time for which the defendant will be imprisoned might be reduced
by the award of parole.

 "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will
not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years,
whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced
to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for
parole does not guarantee that parole will be granted.

 "It cannot accurately be predicted how the parole law and good conduct time might be applied to this
defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.

 "You may consider the existence of the parole law and good conduct time. However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You
are not to consider the manner in which the parole law may be applied to this particular defendant."

Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2001) (emphasis added).
2. The statute reads, in part:

 In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury
rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section
3g(a)(1), Article 42.12, of this code, or if the judgment contains an affirmative finding under Section
3g(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the
court shall charge the jury in writing....

Tex. Code Crim. Proc. Ann. art 37.07 § 4(a) (Vernon Supp. 2001).